UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VINCENT McTAGGERT,

        Plaintiff,                       CIVIL ACTION NO. 05-73183

     v.                               DISTRICT JUDGE SEAN F. COX

UNITED WISCONSIN INSURANCE      MAGISTRATE JUDGE VIRGINIA M. MORGAN
COMPANY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION**

**I. Introduction**

This Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq. (2000), case comes before the court on defendant's motion for judgment and plaintiff's cross-motion to reverse defendant's decision to terminate plaintiff's long-term disability benefits. For the reasons stated below, the court recommends that defendant's motion be granted and that plaintiff's motion be denied.

**II. Background**

Beginning on April 21, 1997, plaintiff worked as a mechanic for PDS Rail Car (AR 0008). His duties included climbing in and out of box cars, using tools, and performing arc welding. Plaintiff had previously worked as a chauffeur and van driver, and as a stock unloader

at a warehouse (AR 0854). Plaintiff is 47 years-old and completed school through 8th grade (AR 0001, 0858).

On or about August 11, 1998, plaintiff suffered an ankle injury while at work (AR 0987). On December 31, 1998, plaintiff suffered a heart attack and, since that date, he has not returned to work (AR 0008-0009).

In January of 1999, plaintiff applied for disability benefits pursuant to the insurance policy defendant issued to PDS Rail Car. Plaintiff's application for benefits was based on his cardiac condition. Defendant granted the application and paid benefits until March of 2002 (AR 0187-0189). In March 2002, defendant terminated the benefits after determining that plaintiff's cardiac condition did not prevent him from having gainful employment (AR 0220-0222). Plaintiff appealed and the benefits were reinstated after plaintiff provided evidence of an ankle injury (AR 0257-0258).

Defendant continued to pay total disability benefits through July 31, 2004. In a letter dated August 6, 2004, defendant notified plaintiff that benefits were being terminated (AR 0652-0655).

On February 1, 2005, plaintiff appealed defendant's decision (AR 0727-0735). Defendant referred plaintiff's appeal to JHA, Inc., the reinsurer, for a review of the medical and vocational evidence (AR 0969-0972). JHA recommended that the termination of benefits be upheld. Defendant upheld its denial of benefits (AR 1001-1002).

Plaintiff now appeals the denial of his claim for benefits pursuant to 28 U.S.C. § 1132(a)(1)(B).

### III. Legal Standards

#### A. ERISA

Congress enacted ERISA to "'protect . . . the interests of participants in employee benefit plans and their beneficiaries' by setting out substantive regulatory requirements for employee benefit plans and to 'provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts.'" Aetna Health, Inc. v. Davila, 542 U.S. 200, 208 (2004), quoting 29 U.S.C. §1001(b) (2000).

A claim involving an Employee Benefit Plan may be brought under the civil enforcement provisions of ERISA and is regarded as arising under federal law. The courts have been directed to develop substantive federal common law as necessary to interpret ERISA and fashion remedies to effectuate the policies underlying ERISA. 29 U.S.C. § 1132(a); Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109-110 (1989). ERISA generally preempts all state laws that relate to Employee Benefit Plans. 29 U.S.C. § 1144(a).

With one exception, federal district courts have exclusive jurisdiction over civil actions brought under ERISA, including claims alleging breach of fiduciary duty, claims requesting equitable relief, other than benefit claims and claims involving statutory penalties under ERISA. 29 U.S.C. § 1132(e)(1). The exception applies to civil actions brought under 29 U.S.C. § 1132(a)(1)(B) to recover benefits under the terms of the Plan, enforce rights under the terms of the Plan, or clarify the participant's rights to future benefits under the Plan. When the exception applies, federal and state courts have concurrent jurisdiction. 29 U.S.C. § 1132(e)(1). The amount in controversy or the citizenship of the parties is irrelevant. 29 U.S.C. § 1132(f).

**B. Disability Evaluation**

While ERISA governs the Employee Benefit Plan in general, whether a claimant is entitled to disability benefits is determined by the language set forth in the individual Plan. Under the terms of the Plan in this case, the definition of disability changed at the end of 24 months. The Plan stated that:

> "'Total Disability' and 'Totally Disabled' means that due to an injury and/or illness,:
> 1. the insured cannot perform the material duties of his or her regular occupation during the elimination period and the following 24 months of the Benefit Period; and
> 2. after 24 months of the Benefit Period, the insured cannot perform any of the material duties of any gainful employment for which he/she is or may be reasonably fitted by education, training or experience."

**C. Standard of Review**

The United States Supreme Court held in Firestone Tire & Rubber Co. v. Bruch that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." 489 U.S. at 115. Where the benefit plan grants the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the Plan, the highly deferential arbitrary and capricious standard of review is appropriate. Yeager v. Reliance Standard Life Ins. Co., 88 F.3d 376, 381 (6th Cir. 1996). Thus, a reviewing court should first examine the Plan to determine whether defendant is a Plan administrator or fiduciary, and whether the required discretion has been given. Federal common law rules of contract interpretation apply to ERISA Plans and those

rules dictate that this Court interpret the Plan's provisions according to their plain meaning and in their ordinary and popular sense. Perez v. Aetna Life Ins. Co., 150 F.3d 550, 556 (6th Cir. 1998).

### *1. Defendant is a fiduciary.*

The Plan issued in this case states "[Defendant] shall have full and final discretionary authority in disputes concerning Benefits and the exclusive power and duty to conclusively construe and interpret the terms of the policy. [Defendant] shall determine all questions of coverage and eligibility for Benefits under the policy. [Defendant's] decisions shall be binding."

The first issue is whether defendant is a Plan administrator or a fiduciary. The definition of "Plan administrator" in ERISA provides that the Plan administrator is the "Plan sponsor" unless otherwise specified in the Plan. 29 U.S.C. § 1002(16)(A)(ii). Where, as here, an Employee Benefit Plan is maintained by a single employer, the "Plan sponsor" is deemed to be the employer. 29 U.S.C. § 1002(16)(B)(I). In the instant case, the Plan does not designate a Plan administrator and, therefore, ERISA's default provision dictates that PDS Rail Car, not defendant, is the Plan administrator. Caffey v. UNUM Life Ins. Co., 302 F.3d 576, 584-585 (6th Cir. 2002).

Under ERISA, a Plan "fiduciary" is one who "exercises any discretionary authority or discretionary control respecting the management of [an ERISA] plan or exercises any authority or control respecting the management or disposition of its assets" or who "has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). The definition is meant to be a functional one and includes both people

specifically named as fiduciaries by the Plan and anyone else who exercises discretionary control or authority over a Plan's management, administration, or assets.  Moore v. LaFayette Life Ins. Co., 458 F.3d 416, 438 (6th Cir. 2006).  In this case, the plain meaning of the Plan language establishes that defendant has discretionary authority in disputes concerning benefits, interpretation of the terms of the policy, and questions of coverage and eligibility for benefits.  Defendant clearly has discretionary authority in the administration of the Plan and is therefore a fiduciary.

### 2. *Defendant has discretionary authority.*

The second issue is whether the Plan grants defendant discretionary authority to determine eligibility for benefits or to construe the terms of the Plan.  While there are no "magic words" required to vest discretion, this circuit has consistently required that the Plan's grant of discretionary authority be express and clear.  See, e.g., Perez, 150 F.3d at 555; Yeager, 88 F.3d at 381; Wulf v. Quantum Chemical Corp., 26 F.3d 1368, 1373 (6th Cir. 1994).  As discussed above, reading that contractual language in an ordinary and popular sense, as this court must, the only reasonable interpretation of the Plan is that it grants discretionary authority to defendant to determine eligibility for benefits and to construe the terms of the Plan.  Because the Plan grants discretionary authority to defendant to determine eligibility for benefits, the arbitrary and capricious standard of review applies.

### 3. *The decision is subject to the arbitrary and capricious standard of review.*

The arbitrary and capricious standard of review is "the least demanding form of judicial review of administrative action," Williams v International Paper Co., 227 F.3d 706, 712 (6th Cir.

2000), and is applied in order to avoid "excessive judicial interference with plan administration." Daniel v. Eaton Corp., 839 F.2d 263, 267 (6th Cir. 1988) (citations omitted). The decision of a Plan administrator will not be considered arbitrary and capricious if it is "rational in light of the plan's provisions." Daniel, 839 F.2d at 267. Stated differently, "when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." Williams, 227 F.3d at 712.

Plaintiff offers several unpersuasive arguments claiming that the arbitrary and capricious standard of review does not apply to the Plan. Plaintiff first argues that the arbitrary and capricious standard of review should not apply because defendant, as the insurer of the Plan, has a financial stake in the outcome of its decisions on eligibility. The Sixth Circuit, however, has rejected the view that a conflict of interest warrants abandoning the arbitrary and capricious standard. McCartha v. National City Corp., 419 F.3d 437, 442-443 (6th Cir. 2005). Rather than causing a change in the standard of review, a conflict of interest is taken into account as a factor in determining whether the decision was arbitrary and capricious. University Hospitals Of Cleveland v. Emerson Elec. Co., 202 F.3d 839, 842 (6th Cir. 2000).

Plaintiff also argues that the arbitrary and capricious standard of review does not apply because the Plan failed to meet the requirements of a qualified ERISA Plan. Judge Battani, however, has already ruled that the Plan in this case is an ERISA Plan. See Judge Battani's Opinion and Order denying plaintiff's motion to remand and granting defendant's motion to dismiss, Case No. 05-73183, Docket No. 10. Even if this Court could review *de novo* whether the Plan qualifies under ERISA, which it cannot under the law of the case doctrine, the Plan

meets the requirements of an ERISA Plan, as discussed by Judge Battani's application of the three step analysis of Thompson v. American Home Assur. Co., 95 F.3d 429, 434 (6th Cir. 1996), in her Opinion and Order.

Plaintiff further argues that the arbitrary and capricious standard of review does not apply because the Plan language was facially inadequate to transfer discretionary authority to defendant. In plaintiff's view, the policy language is insufficient because it does not provide for a method by which a named fiduciary could delegate discretionary authority to non-fiduciaries, such as defendant, as described in 29 U.S.C. § 1105(c)(1). However, as discussed above, defendant is clearly a fiduciary responsible for determining eligibility benefits under the plain language of the Plan. Because defendant is already, under the terms of the Plan, the fiduciary with discretionary authority to determine eligibility for benefits and construe the terms of the Plan, it is unnecessary to have a named fiduciary transfer discretionary authority to defendant pursuant to 29 U.S.C. § 1105(c)(1).[1]

Plaintiff next argues that the arbitrary and capricious standard of review does not apply because the Plan itself incorporates Michigan laws and Michigan laws prohibit giving discretion to insurers in payment of benefits. ERISA generally preempts state law, but this Plan does contain language stating that it should conform to state statutes, "Any provision of this policy

---

[1]Plaintiff also argues at one point that JHA was the actual decision-maker on plaintiff's eligibility for benefit and that the arbitrary and capricious standard of review does not apply because the Plan neither granted JHA discretionary authority nor described a method by which named fiduciaries could transfer such authority to JHA. However, as seemingly acknowledged by plaintiff in the bulk of his briefs, the administrative record clearly establishes that JHA only made a recommendation and was not the actual decision-maker on plaintiff's eligibility.

that, on its effective date, is in conflict with the statutes of the state in which it is issued, or issued for delivery, is amended by this section to conform to the minimum requirements of that state statute."  In support of his argument that Michigan law prohibits insurers from having discretion, plaintiff relies on MCL 500.3006(3), which provides that an insurer shall timely pay claims when furnished with satisfactory proof of a disability.  It is not clear, however, that the Plan language granting defendant discretion in this case conflicts with that statute as no language in MCL 500.3006(3) expressly prohibits contracts giving insurers discretion in determining eligibility for benefits.  Plaintiff also relies on a Michigan Supreme Court where that court vacated a decision of the Michigan Court of Appeals in which the Court of Appeals found that the Plan in the case granted the insurer discretion.  See, Krochmal v. Paul Revere Life Ins. Co., 474 Mich. 1010 (2006).  Krochmal, however, did not involve an ERISA Plan or MCL 500.3006(3), and it did not hold that, under Michigan law, insurers can never enter contracts giving them discretion.  Furthermore, even if the Plan does incorporate the language of MCL 500.3006(3) requiring that an insurer pay benefits when furnished with satisfactory proof of a disability, the Sixth Circuit has specifically found that a Plan which requires "satisfactory proof of a disability" is a Plan that clearly grants discretion and which is subject to review under the arbitrary and capricious standard of review.  Perez v. Aetna Life Ins, 150 F.3d 550, 556-558 (6th Cir. 1998).

## IV. Analysis

Plaintiff argues that defendant's decision to terminate his benefits was arbitrary and capricious because of the result defendant reached and because of the process defendant used in

reaching that result.[2]  Potentially relevant to both arguments is defendant's possible conflict of interest.  As discussed above, the possible conflict of interest should be taken into account as a factor in determining whether the decision was arbitrary and capricious.  McCartha v. National City Corp., 419 F.3d 437, 442-443 (6th Cir. 2005).  That factor, however, only applies where there is significant evidence was motivated by self-interest.  McCartha, 419 F.3d at 442.  Defendant's financial stake in benefit determinations alone is not sufficient to suggest a conflict of interest.  Donatiello v. Hartford Life and Accident Ins. Co., 344 F.Supp.2d 575, 579 (E.D. Mich. 2004).  In this case, there is simply nothing in this record to suggest that defendant's decision was motivated or influenced by its financial interest in minimizing Plan payouts, beyond the fact that defendant does indeed have such a financial stake in benefit determinations and the possible conflict of interest is not a factor in this case.

Another possible factor in determining whether defendant's decision was arbitrary and capricious is the SSA determination that he is disabled.  While not binding, an SSA determination is meaningful because it provides support for the conclusion that an administrative agency charged with examining plaintiff's medical records found, as it expressly said it did, objective support for the opinion that plaintiff was disabled.  See, Calvert v Firstar Finance, Inc., 409 F.3d 286, 294 (6th Cir. 2005).  In this case, while the SSA determination came after

---

[2]Plaintiff also seems to argue that defendant breached its fiduciary duty in administering the Plan.  Plaintiff does not possesses a cause of action for such a breach because § 1132(a)(1)(B) provides a remedy for plaintiff's alleged injury that allows him to brings a lawsuit to challenge defendant's denial of benefits.  See, Wilkins v. Baptist Healthcare Sys. Inc., 150 F.3d 609, 615 (6th Cir. 1998).

defendant's decision to deny plaintiff's claim for benefits, it is still relevant because of the conclusion the agency reached.

Regarding the result reached by defendant, both parties rely on the opinions of doctors in supporting their motions. It is undisputed that, after suffering a near-fatal heart attack, plaintiff was diagnosed with coronary artery disease leading to an acute myocardial infarction and cardiovascular arrest. What is disputed are the effects plaintiff's condition has on his ability to work.

Dr. Charbal Bazo is plaintiff's primary care physician, but he is not a cardiologist. According to Dr. Bazo, plaintiff's condition has rendered him unable to perform any jobs because he often has chest pains, weakness, high blood pressure fatigue, shortness of breath, and trouble concentrating. Plaintiff would only be able to work for a half hour before needing a half hour break. Plaintiff would also need four days off a month. According to Dr. Bazo, he based his opinions on his examination of plaintiff, stress tests performed on plaintiff and laboratory work performed on plaintiff (AR 0941-0950).

Dr. Samman is a cardiologist who has treated plaintiff. In June 1999, Dr. Samman performed a cardiac catheterization on plaintiff and found no evidence of restenosis related to the angioplasty performed on plaintiff at the time of his heart attack. Dr. Samman did note that plaintiff reported frequent bouts of fatigue and occasional episodes of chest discomfort. Dr. Samman advised plaintiff that plaintiff should be able to return to work. Dr. Samman's report did not state what, if anything, has to occur before plaintiff could return to work (AR 0058). In

September 2004, Dr. Samman performed another cardiac catheterization on plaintiff and found similar results to the earlier cardiac catheterization (AR0883).

At defendant's request, Dr. Paul W. Sweeney, a cardiologist, reviewed plaintiff's medical records. Dr. Sweeney believed that the exercise testing performed on plaintiff showed an excellent exercise capacity without evidence of eschemia and that the cardiac catheterizations performed on plaintiff showed no significant obstructive coronary artery disease to explain plaintiff's complaints of chest discomfort. Dr. Sweeney concluded that, from a cardiac standpoint, plaintiff could do medium capacity work full-time without any restrictions on walking, sitting, or bending. Plaintiff would need a restriction on lifting (AR 0984-0985).

Russell G. Stogsdill, a physician's assistant, reviewed plaintiff's medical records relating to his ankle. Stogsdill noted that, while plaintiff has repeatedly complained about his ankle, plaintiff has declined certain types of treatment and has refused to wear a brace. Stogsdill concluded that, on the basis of the x-rays and examinations performed on plaintiff, plaintiff could be released to activities without formal restrictions and that plaintiff is capable of the light level of occupational activities (AR 0987-0988).

In addition to the medical opinions, both parties submitted opinions by vocational experts. In May of 2004, Karen L. Swanson–Daigle completed a transferable skills analysis (TSA) at the request of defendant. Swanson-Daigle reviewed plaintiff's medical records, work history, and employment records. Swanson-Daigle concluded that, even considering plaintiff's physical limitations and limited education, plaintiff had several long-term vocational

opportunities. Among the opportunities identified by Swanson-Daigle were positions as a driver, general laborer, receiving associate, and groundskeeper (AR 0632-0634).

Another vocational expert, Dr. Samuel Goldstein, performed a TSA on plaintiff at the request of plaintiff. Goldstein examined plaintiff, reviewed the medical records and previous TSA, and gave plaintiff an aptitude test. On the basis of Bazo's opinions, Goldstein concluded that it is unreasonable to believe plaintiff could, medically and physically, sustain full time employment. Goldstein also concluded that Swanson-Daigle's analysis was flawed because she described jobs that are actually semi-skilled positions or above, and jobs for which plaintiff had no skills (AR 852-860).

A third vocational expert, Charles Galarraga, performed a TSA on plaintiff at the request of JHA. Galarraga reviewed the claim file and all medical records delivered with the referral. On the basis of Sweeney and Stogsdill's opinions, Galarraga concluded that plaintiff could work as a taxicab starter, chauffeur, or telephone solicitor (AR 0994-1000).

Ultimately, the conflict between the vocational experts can be traced to the conflict between the doctors. While all three vocational experts stated they relied on all the medical records, each relied heavily on specific opinions. Goldstein expressly stated that his conclusions are based on taking Dr. Bazo at his word and on accepting a reasonable portion of plaintiff's statements. Swanson-Daigle and Galarraga only cited to the medical opinions of Sweeney and Stogsdill. The differences in the medical opinions therefore lead to the differences in the opinions by the vocational experts, even over the question of whether plaintiff could perform his old jobs as a driver and chauffeur.

The conflict in opinions, both medical and vocational, compels the conclusion that defendant's decision to deny benefits was not arbitrary or capricious.  "Generally, when a plan administrator chooses to rely upon the medical opinion of one doctor over that of another in determining whether a claimant is entitled to ERISA benefits, the plan administrator's decision cannot be said to have been arbitrary and capricious because it would be possible to offer a reasoned explanation, based upon the evidence, for the plan administrator's decision."  McDonald v. Western-Southern Life Ins. Co., 347 F.3d 161, 169 (6th Cir. 2003).  In this case, defendant chose to rely on the opinions of Sweeney and Stogsdil, and its interpretation of Samman's report, over the opinion of Bazo and plaintiff's interpretation of Samman's report.  That decision was not arbitrary or capricious.

While, as noted by plaintiff, only Bazo and Samman treated plaintiff, "under the arbitrary and capricious standard, Defendant is free to disagree with the conclusions of Plaintiff's treating physician, and instead prefer the opinions of a reviewing doctor who has never examined Plaintiff so long as those opinions are reasonable and based on the evidence."  Harris v Kemper Ins. Companies, 360 F.Supp.2d 844, 849 (E.D. Mich. 2005).  Sweeney and Stogsdill based their opinions on the evidence before them, including the exercise tests and cardiac catheterizations performed on plaintiff.  On the basis of that evidence, they concluded that plaintiff could work.  Samman's report stated that plaintiff should be able to resume working.  Two vocational experts concluded that plaintiff could do a number of jobs.  Viewing those opinions under the arbitrary and capricious standard of review, defendant's decision to terminate benefits should be upheld and judgment entered in favor of defendant.

-14-

Plaintiff also argues that defendant's decision was arbitrary and capricious because of the process by which it reached its decision to terminate benefits. As discussed above, plaintiff received total disability benefits until July 2004. Plaintiff argues that because he was receiving total disability benefits and nothing in his condition changed, the decision to terminate benefits was arbitrary and capricious. The Plan in this case requires that plaintiff remain under the care of a qualified physician and provide medical records to defendant, which suggests that plaintiff has a continuing obligation to prove his disability. Donatiello v. Hartford Life and Accident Ins. Co., 344 F.Supp.2d 575, 580 (E.D. Mich. 2004). The mere fact that defendant once found plaintiff to be totally disabled does not preclude it from later terminating benefits if it determines, in its discretion, that plaintiff no longer meets the applicable standard.

Plaintiff also argues that the process by which defendant reached its decision to terminate benefits was arbitrary and capricious because defendant only terminated the benefits after failing to coerce plaintiff into a settlement. The administrative record does reflect the fact that defendant raised the possibility of settling plaintiff's claim (AR 0569-0570), but there is nothing in the record suggesting that defendant's decision was irrational in light of the Plan's provisions. Defendant indicated that it was likely going to deny plaintiff further benefits and raised the possibility of settling the case. As discussed above, defendant's decision was based on ample evidence and the mere fact that it offered plaintiff a settlement does not render its decision arbitrary and capricious.

Plaintiff further argues that defendant's decision to terminate benefits was arbitrary and capricious because of defendant's "conspiracy" with the reinsurer JHA. Plaintiff argues that

-15-

defendant was secretly working with JHA to terminate plaintiff's benefits both before and during JHA's review of plaintiff's case. The fact that defendant consulted with JHA and solicited a recommendation from it does not establish that defendant conspired to wrongfully terminate plaintiff's benefits. Moreover, plaintiff's concerns about the involvement of JHA are essentially irrelevant where the record shows that defendant thoroughly reviewed plaintiff's case and came to a reasoned decision.

## V.  Conclusion

For the reasons stated above, the court recommends that the defendant's motion for judgment be GRANTED and that plaintiff's cross-motion to reverse defendant's decision to terminate plaintiff's long-term disability benefits be DENIED.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

s/Virginia M. Morgan<br>
Virginia M. Morgan<br>
United States Magistrate Judge

Dated: April 5, 2007

---

## PROOF OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on April 5, 2007.

s/Jane Johnson<br>
Case Manager to<br>
Magistrate Judge Virginia M. Morgan